Electronically Filed
Intermediate Court of Appeals
30139
15-FEB-2012
08:30 AM

NO. 30139

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


ROBERT GRINPAS and ESTHER GRINPAS,
Plaintiffs-Appellants,
v.
KAPAA 382, LLC, A Hawaii Limited Liability Company,
KULANA PARTNERS, LLC, a Hawaii Limited Liability company,
WILLIAM R. HANCOCK, and DOES 1-10, Defendants-Appellees.


KULANA PARTNERS, LLC,
Defendant/Third-Party Plaintiff-Appellee,
v.
WILLIAM R. HANCOCK, Trustee of the Hancock and Company, Inc.,
Profit Sharing Trust, under trust instrument dated 4/3/03,
Third-Party Defendant.


APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CIVIL NO. 07-1-0132)


MEMORANDUM OPINION
(By: Foley, Presiding Judge, Reifurth and Ginoza, JJ.)

Plaintiffs-Appellants Robert and Esther Grinpas (the Grinpases) claim an access and utilities easement over property owned by Defendant-Appellee Kulana Partners, LLC (KPL) known as Remnant 3. Upon cross-motions for partial summary judgment, the

Circuit Court of the Fifth Circuit (circuit court)[1] issued an order on August 3, 2009, granting KPL's motion for partial summary judgment and denying the Grinpases' motion for partial summary judgment, holding that no easement exists. On August 3, 2009, the circuit court also entered a Final Judgment in favor of KPL and against the Grinpases. The Grinpases subsequently filed a motion to alter and amend the summary judgment order and the judgment, which was denied by the circuit court on October 6, 2009.

The Grinpases timely appealed on October 28, 2009.

On appeal, the Grinpases raise a number of points of error, which we summarize as follows:

(1) The circuit court erred in granting KPL's motion for partial summary judgment because there were genuine issues of material fact:

(a) precluding application of the merger doctrine;

(b) whether Kulana Condominium Property Regime (Kulana CPR) documents established the easement, which could not be removed without the Grinpases' consent;

(c) whether the Grinpases were intended third-party beneficiaries of provision C-67(A)(2) of a Deposit Receipt Offer and Acceptance (DROA) and the recorded Kulana CPR documents;

(d) whether KPL purchased the Remnant 3 parcel with notice and thus subject to the easement;

(e) whether, at the time KPL purchased Remnant 3, KPL understood that DROA provision C-67(A)(2) referred to an easement rather than the License Agreement;

(f) whether the circuit court reached an inequitable and unreasonable result;

---

[1] The Honorable Randall G.B. Valenciano presided.

2

(g) such that the circuit court erred in denying the Grinpases' motion to alter or amend the summary judgment order and the judgment;

(2)  The circuit court erred in denying the Grinpases' motion for partial summary judgment and in denying their motion to alter and amend the summary judgment order and the judgement.

For the reasons discussed below, we vacate the judgment filed on August 3, 2009, and remand for further proceedings.

I.  **Background**

A.  **License Agreement**

The Grinpases own and operate a tropical flower farm and flower marketing business in Kapahi, Kauaʻi, which they initially operated on property they own, known as Lot 77J.  In 1998, the Grinpases sought to expand their farm business and assert that they had an agreement with defendants Kapaa 382, LLC (Kapaa 382) and William R. Hancock (Hancock) to purchase certain nearby property and that they would be granted a permanent access and utilities easement through property known as Remnant 3 to join the anticipated two portions of their farm properties.

The Grinpases allege that they could not purchase the nearby property until a subdivision and condominium property regime were completed, and thus in the meantime they entered into a fifteen year License Agreement with Kapaa 382 for use of approximately nine acres.  The License Agreement was dated August 13, 1999 and subsequently recorded in the Bureau of Conveyances on January 27, 2000.  A map attached to the License Agreement appears to show that the License Agreement covered portions of a nearby property known as Lot 2 and access to Lot 2 over a remnant parcel, apparently Remnant 3.  The access way shown in the License Agreement map connects Lot 77J with Lot 2.

3

B.   Sale of Remnant 3 to KPL

At some point in time, William R. Hancock, Trustee of the Hancock and Company, Inc. Profit Sharing Trust (Hancock Trust) gained ownership of Remnant 3.  On July 22, 2002, the Hancock Trust and KPL entered into a DROA for the sale of Remnant 3 to KPL for $2 million.  The DROA's "special term" C-67(A)(2) stated: "[t]ransaction contingent upon Buyer's review and approval by 7/29/02 of: . . . Grimpas [sic] Access Easement[.]"

On July 24, 2002, Hancock sent correspondence to KPL and attached "two of the due diligence items" which consisted of a Seller's disclosure statement and, as to the "Grimpas [sic] Easement," a "map of the current easement."  With respect to the easement, Hancock's letter stated in pertinent part:

> We are working with Grimpas [sic] to reduce the easement size by moving the fence closer and more parasailed [sic] to the road.  Originally, the fence was put up before the road was installed to keep the cows out of the area.
>
> Fidelity National promised to have the preliminary title report to me tomorrow and I will fax or email it to you as soon as I get it.  Steve Lee promised the easement document by Friday afternoon and I will likewise get it to you.

(Emphasis added).  In the attached Seller's disclosure statement executed by Hancock, he answered "yes" to the question "[a]re there any easements affecting this Property" and further explained "Grimpas [sic] access easement to flower farm unit 2x[.]"  Hancock also answered "yes" to the questions "[a]re there any roadways, driveways, walls, fences, and/or other improvements which are shared with adjoining land owners" and "[a]re there any written agreements concerning these items" and explained "written Grimpas [sic] easement, written access easement[.]"  The map attached to Hancock's letter included a circled area and the handwritten notation "area of Grimpas [sic] current easement[.]"

KPL does not dispute that prior to purchasing Remnant 3, Hancock showed KPL members Curtis Crane and C. Dustin Crane a

4

roadway on Remnant 3 that Hancock referred to as an access easement. However, the declaration of C. Dustin Crane further elaborates that:

> On or around August 6, 2002, KPL received a Preliminary Report regarding Remnant 3 ("Preliminary Report"). The Preliminary Report did not include any reference to an "access easement". Mr. Hancock approved the Preliminary Report and did not make any changes, supplements or amendments to the Preliminary Report. Based on the Preliminary Report and Mr. Hancock's approval of the same, KPL's members understood that there was no recorded easement encumbering Remnant 3.

There is nothing in the record evidencing that an "easement document" as contemplated in Hancock's July 24, 2002 letter was created or executed.

By way of a Trustee's Deed dated August 12, 2002, and recorded in the Bureau of Conveyances on August 28, 2002, the Hancock Trust conveyed Remnant 3 to KPL. The Trustee's Deed did not contain any provision concerning the Grinpases' alleged easement.

C. **Settlement Agreement**

On September 11, 2003, the Grinpases, Hancock, Kapaa 382 and James W. Lull ("Lull") entered into a Settlement Agreement in order to settle various disagreements. Among other things, the Settlement Agreement purported to require that Kapaa 382, Hancock and Lull provide the Grinpases with certain easements. Only incomplete copies of the Settlement Agreement are contained in the record and it is thus unclear what property was affected by the Settlement Agreement. To the extent the Settlement Agreement purported to provide an easement over Remnant 3, KPL owned Remnant 3 when the Settlement Agreement was executed and KPL was not a party to the agreement.

D. **Condominium Declarations and Maps**

On December 14, 2004, a "Declaration of Condominium Property Regime of Kūlana and Condominium Map No. 3902" (CPR

5

Declaration), executed by Hancock on behalf of Kapaa 382 as the fee owner and developer, was recorded in the Bureau of Conveyances.[2] It is uncontested that Condominium Map No. 3902 includes a map entitled "Condominium Map for UNITS 26A TO 26E, INCLUSIVE" (26A/26E Map),[3] which shows easements AU-26A and AU-26E in favor of the Grinpases' Lot 77-J. As reflected in the 26A/26E Map, Units 26A and 26E are part of Remnant 3.

At the time that the CPR Declaration and the 26A/26E Map were recorded, KPL owned Remnant 3 and did not execute the CPR Declaration. However, on either November 30, 2004 or December 1, 2004[4] (prior to recording of the CPR Declaration and the 26A/26E Map), C. Dustin Crane, as the Managing Member of KPL, executed a "Consent and Joinder" which referenced Document No. 2004-252101 (the CPR Declaration). The Consent and Joinder was then recorded at the Bureau of Conveyances on December 21, 2004 (one week after recording of the CPR Declaration and 26A/26E Map).[5] The Grinpases contend the Consent and Joinder is of

---

[2] The document reflects Hancock as the President of Kauai Lease and Loan, Ltd., a Member of Kapaa 382.

[3] It is unclear from the record what constituted the entirety of Condominium Map No. 3902. However, the CPR Declaration states one-hundred and eight units were being created.

[4] The Consent and Joinder indicates two different dates that it was executed. Above the signature of C. Dustin Crane, the document reflects the date of November 30, 2004. However, on the same page, the notary statement below C. Dustin Crane's signature indicates that he signed the document on December 1, 2004.

[5] The Consent and Joinder provides:

> WITHOUT RECOURSE OF ANY KIND AGAINST THE UNDERSIGNED, except as to its own property subject hereto, and with the intention of complying with Chapter 514A, Hawaii Revised Statutes, the undersigned KŪLANA PARTNERS, LLC, a Hawaii limited liability company, hereby consents to and joins and subjects the interest of the undersigned in the property identified by the TMK Number listed above, to the terms of the recording of the DECLARATION OF CONDOMINIUM PROPERTY REGIME OF KULANA, the BYLAWS OF KŪLANA, and the DECLARATION

(continued...)

particular significance and establishes KPL's intent to create easements AU-26A and AU-26E reflected in the 26A/26E Map. KPL contends the Consent and Joinder does not create any easements because KPL was deceived as to its effect and, further, the document itself was void for failing to properly describe the subject property.[6]

On January 27, 2005, an "Amended and Restated Declaration of Condominium Property Regime" (First Amended Declaration) for Kulana was recorded. Based on the record, the First Amended Declaration was executed by Hancock on behalf of Kapaa 382. There is nothing in the record indicating that KPL approved or consented to the First Amended Declaration.

On July 20, 2005, a document entitled "Amendment to Declaration and to Condominium Map of the Condominium Property Regime 'Kūlana' ... and Quitclaim Deeds" (Second Amended Declaration) was recorded in the Bureau of Conveyances. KPL contends that, even if easements were created by the prior CPR

---

[5] (...continued)
OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR THE KŪLANA SUBDIVISION, the DECLARATION OF GRANT AND RESERVATION OF EASEMENTS FOR THE KŪLANA SUBDIVISION and its associated condominium map to be recorded in the Bureau of Conveyances simultaneously herewith.

[6] As noted by KPL, the property description for the Consent and Joinder indicates "TMK (4)4-3-3:022," whereas the CPR Declaration referenced Remnant 3 as TMK number "4-4-3-3-021." The Grinpases contend the CPR Declaration contained a scrivener's error, erroneously reflecting an incorrect TMK number for Remnant 3, and that the TMK number contained on the Consent and Joinder accurately referred to Remnant 3 at that time. Apparently consistent with the Grinpases' argument, an "Amended and Restated Declaration of Condominium Property Regime" by Kapaa 382, recorded on January 27, 2005, referenced Remnant 3 as TMK No. "(4)4-3-003:022." Ultimately, however, the correct TMK number for Remnant 3 is not apparent.

In identifying the subject property as Remnant 3, the Grinpases further point out that the Consent and Joinder references Document No. 2004-152285 (alleged to be the Trustee's Deed conveying Remnant 3 to KPL on August 12, 2002) and Document No. 2004-252101 (the CPR Declaration). We note, however, that the correct document number for the Trustee's Deed appears to be 2002-152285.

7

documents (the CPR Declaration, the 26A/26E Map, and the Consent and Joinder), the Second Amended Declaration withdrew Remnant 3 from the project and thus Remnant 3 was no longer burdened by the CPR documents. The Second Amended Declaration was executed by KPL as "Remnant 3 Owner"[7] and by Hancock on behalf of Kapaa 382. This document states, in part:

> (a) Notice is hereby given that pursuant to Paragraph 20.5 of the Declaration that Remnant 3 (including for purposes hereof, the condominium units designated as Units 26A through 26E, inclusive, being the condominium units located on Remnant 3) is hereby removed and withdrawn from the Project. Hereafter, except as hereinafter set forth, neither Remnant 3 nor such condominium units shall be burdened by nor receive the benefits of the Declaration, Bylaws, or the Condominium Map[.]

(Emphasis added). As part of the "Quitclaim Deeds" contained within this document, Kapaa 382 deeded to KPL certain of Kapaa 382's rights, title and interest in Remnant 3. In turn, KPL deeded to Kapaa 382 certain of KPL's rights, title and interest in the remaining Kulana CPR property (i.e., the property covered by the CPR Declaration other than Remnant 3). The quitclaim deed by Kapaa 382 states, in relevant part, that it does:

> REMISE, RELEASE AND QUITCLAIM, unto Grantee [KPL], its successors and assigns, absolutely and in fee simple forever, all of [Kapaa 382's] right, title or interest in Remnant Lot 3, subject, however, to the encumbrances, exceptions, reservations and other matters, if any, set forth therein or herein;
>
> AND the reversions, remainders, rents, issues and profits thereof, and all of the estate, right, title and interest of [Kapaa 382], both at law and in equity therein and thereto.
>
> TO HAVE AND TO HOLD the same, together with all buildings, improvements, tenements, hereditaments, rights, easements, privileges and appurtenances thereunto belonging or appertaining or held and enjoyed therewith unto said [KPL], in the tenancy aforesaid, absolutely and in fee simple[.]

(Emphasis added).

---

[7] This document was signed by KPL's "Managing Member," C. Dustin Crane.

E.   **Grinpases' Purchase of Unit 2X**

Subsequently, the Grinpases eventually purchased Unit 2X from Kapaa 382.  A Kulana Apartment Deed transferring ownership of Unit 2X from Kapaa 382 to the Grinpases was recorded on July 16, 2007.  Based on maps in the record and as is undisputed by the parties, Unit 2X is property that would be connected to Lot 77J if it is determined that easements AU-26A and AU-26E exist.  The Grinpases filed the Complaint in this lawsuit approximately two months after the Kulana Apartment Deed was recorded.

II.  **Standard of Review**

The appellate court reviews "the circuit court's grant or denial of summary judgment *de novo*."  Querubin v. Thronas, 107 Hawaiʻi 48, 56, 109 P.3d 689, 697 (2005) (quoting Durette v. Aloha Plastic Recycling, Inc., 105 Hawaiʻi 490, 501, 100 P.3d 60, 71 (2004)).  Accordingly,

> [o]n appeal, an order of summary judgment is reviewed under the same standard applied by the circuit courts.  Summary judgment is proper where the moving party demonstrates that there are no genuine issues of material fact and it is entitled to a judgment as a matter of law.  In other words, summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.

Iddings v. Mee-Lee, 82 Hawaiʻi 1, 5, 919 P.2d 263, 267 (1996) (citation omitted).  See also Hawaiʻi Rules of Civil Procedure Rule 56(c).

III. **Discussion**

A.   **The Issue of Merger Is Not Reached Because There Was No Express Easement Created By DROA Provision C-67(A)(2)**

As previously noted, the DROA between the Hancock Trust and KPL contained provision C-67(A)(2), which stated: "[t]ransaction contingent upon Buyer's review and approval by 7/29/02 of: . . . Grimpas [sic] Access Easement[.]"  It appears

9

from the record that the circuit court granted KPL's motion for summary judgment on grounds that the Trustee's Deed transferring Remnant 3 to KPL did not contain the Grinpases' alleged easement and thus the doctrine of merger applied to preclude said easement.[8]

Under the doctrine of merger, "upon delivery and acceptance of the deed, the provisions of the underlying contract for conveyance are merged into the deed and thereby become extinguished and unenforceable." S. Utsunomiya Enters., Inc. v. Moomuku Country Club, 75 Haw. 480, 514, 866 P.2d 951, 968 (1994). The Grinpases argue that the doctrine of merger should not apply to extinguish DROA provision C-67(A)(2) regarding the alleged easement because it was a mistake not to include the easement in the Trustee's Deed, and further, they had collateral rights under provision C-67(A)(2). In short, the Grinpases claim an express easement was created under DROA provision C-67(A)(2) to which they contend the merger doctrine should not apply. KPL argues, in turn, that there was no express easement across Remnant 3 and the Trustee's Deed correctly reflected this fact.

We agree with KPL that DROA provision C-67(A)(2) did not create an express easement. As a result, we need not reach the question of merger.

> An easement may be created by express grant. The scope of such an easement is set forth in express terms, either in the granting documents or as matter of incorporation and legal construction of terms of relevant documents, and the extent of the easement is fixed by the conveyance.
>
> A grant of an easement should be drawn and executed with the same formalities as a deed to real estate. Thus, although one can grant an express, irrevocable easement, it must be evidenced by a writing manifesting a clear intent to create an interest in the land. An easement is created if

---

[8] The circuit court's August 3, 2009 order granting KPL's motion for partial summary judgment is silent as to the basis for its ruling, however in comments at the hearing on the Grinpases' motion to alter or amend, the circuit court indicated it had relied on the merger doctrine.

10

the owner of the servient estate either enters into a contract or makes a conveyance intended to create a servitude that complies with the Statute of Frauds or falls within an exception to the Statute of Frauds.

As a general rule, to constitute a grant of an easement, any words clearly showing the intention to grant an easement are sufficient. The intent to grant an easement must be so manifest on the face of the instrument, however, that no other construction can be placed on it. Thus, to create an easement by express grant, there must be a writing containing plain and direct language evincing the grantor's intent to create a right in the nature of an easement rather than a license.

An acknowledgment in a deed of the existence of an easement is not equivalent to an intent to create an easement. Language stating that a conveyance is subject to an existing easement, indicating that the grantor wishes to exclude the easement from warranties of title, does not create an easement. However such language does not necessarily preclude the creation of an easement if that is what the grantor intended.

25 Am. Jur. 2d Easements and Licenses § 15 (2004) (emphasis added) (footnotes omitted).

Persons in possession of property may create express easements by grant, for a consideration or by gift, transferring away the right or rights represented by the easement to another.... The person creating the easement must intend to create such an interest and observe the proper formalities in the local jurisdiction for transferring property by grant or by devise.

Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., 100 Hawai'i 97, 122, 58 P.3d 608, 633 (2002) (Ramil, J., concurring) (emphasis added) (quoting Thompson on Real Property § 60.03(a)(1) at 405 (Thomas ed., 1994 & Supp. 2000)).

[I]n interpreting an express grant, intent of the parties is paramount:

[A]ny words which clearly show the intention to give an easement, which is by law grantable, are sufficient to effect that purpose, providing the language is sufficiently definite and certain in its terms. Neither words of limitation, nor words of inheritance, nor technical terminology are necessary to create an easement. If the language of the grant is free from ambiguity, it is not the subject of interpretation, and no resort to extrinsic facts and circumstances may be made to modify the clear terms of the grant. To determine whether an easement is the intention of the parties, courts will examine the language of the grant, the circumstances surrounding its creation and

> the property involved, with construction in favor of
> the grantee.

Id. at 123, 58 P.3d at 634 (Ramil, J., concurring) (emphasis added) (quoting Thompson on Real Property § 60.03(a)(7) at 415); see also Thompson on Real Property § 60.03(a)(7) at 485-86 (2nd Thomas ed., 2006).

In this case, DROA provision C-67(A)(2) does not show an intent by KPL to grant an easement over Remnant 3. Rather, it states that the transaction between the Hancock Trust and KPL was "contingent upon [KPL's] review and approval by 7/29/02 of: . . . Grimpas [sic] Access Easement[.]" This language expressly contemplates KPL's review and approval of another document showing or establishing the Grinpases' easement. This is further supported by Hancock's letter to KPL dated July 24, 2002, which stated that "the easement document" would be provided to KPL. The record on appeal contains no such document. Instead, the Grinpases rely on DROA provision C-67(A)(2) as creating the easement, which it does not.

Given the record in this case, including the undisputed language of DROA provision C-67(A)(2), we conclude that this DROA provision did not create an express easement over Remnant 3. Because no express easement was created, there is no need to consider whether the lack of an easement in the Trustee's Deed triggers the merger doctrine. Rather, as KPL asserts, the Trustee's Deed accurately reflects that there was no express easement over Remnant 3 at that time. KPL is entitled to summary judgment on this issue.

B. **Genuine Issues of Material Fact Exist As To Whether the Kulana CPR Documents Established An Easement Over Remnant 3**

The Grinpases argue that the circuit court erred in granting summary judgment because there were genuine issues of

12

material fact as to whether the Kulana CPR documents established an easement. The Grinpases contend that the recording of the CPR Declaration and the 26A/26E Map, along with the execution and recording of KPL's Consent and Joinder, created easements AU-26A and AU-26E over units 26A and 26E (which are part of Remnant 3) in favor of Lot 77J. By their argument, the Grinpases assert the existence of an express easement.

KPL argues, in turn, that because the CPR Declaration and the 26A/26E Map were recorded on December 14, 2004, when KPL owned Remnant 3, Kapaa 382 did not have any authority to plat an easement over Remnant 3. As previously noted, KPL further argues that its Consent and Joinder failed to create any easements because KPL was misled as to the effect of the Consent and Joinder. KPL further argues that, even if easements were created, the Second Amended Declaration withdrew Remnant 3 from the Kulana CPR and Remnant 3 is no longer burdened by any easements under the CPR Declaration or the 26A/26E Map.

We conclude that there are genuine issues of material fact as to whether KPL intended to create easements via the Consent and Joinder. Moreover, *if easements were created* by the Consent and Joinder, there are genuine issues of material fact as to the intent and meaning of the Second Amended Declaration, and further, no evidence that the Grinpases agreed to termination of any easements.

1. **The consent and joinder**

Hawaii Revised Statutes (HRS) Chapter 514A governs Condominium Property Regimes (CPR) in Hawai'i. HRS § 514A-20 (2006 Repl.) requires that for property to be subject to a CPR, all owners must expressly declare their desire to submit the

13

property to the CPR.[9]  In this case, in order to include Remnant 3 in the Kulana CPR, it was thus necessary for KPL (the owner of Remnant 3 at the time) to expressly agree.  On its face, it appears that the Consent and Joinder executed by KPL was an effort to satisfy this requirement.  The parties, however, have significant disagreement as to the import of the Consent and Joinder with regard to whether it created easements AU-26A and AU-26E over Remnant 3.

With respect to whether KPL's Consent and Joinder created the easements, KPL's intent is "paramount." AOAO of Wailea Elua, 100 Hawai'i at 123, 58 P.3d at 634 (Ramil, J., concurring).  As noted earlier, "[t]he person creating the easement must intend to create such an interest and observe the proper formalities in the local jurisdiction for transferring property by grant or by devise." Id. at 122, 58 P.3d at 633 (Ramil, J., concurring) (quoting Thompson on Real Property § 60.03(a)(1) at 405).  We also again note:

> An easement is created if the owner of the servient estate either enters into a contract or makes a conveyance intended to create a servitude that complies with the Statute of Frauds or falls within an exception to the Statute of Frauds.

---

[9]  HRS § 514A-20 states:

> § 514A-20 Condominium property regimes.  Whenever the sole owner or all of the owners including all of the lessees of a property expressly declare, through the execution and recordation of a master deed, together with a declaration, which declaration shall set forth the particulars enumerated by section 514A-11, the sole owner's or their desire to submit the property to the regime established by this chapter, there shall thereby be established a condominium property regime with respect to the property, and this chapter shall be applicable to the property.  If the master deed is already recorded, the recordation of the declaration is sufficient to achieve the same result.

Although the parties dispute whether the condominium documents created an easement, and whether KPL's withdrawal of Remnant 3 from the condominium regime would terminate any easement, the record does not reflect any party challenging the validity of the Kulana condominium property regime.

> As a general rule, to constitute a grant of an easement, any words clearly showing the intention to grant an easement are sufficient. The intent to grant an easement must be so manifest on the face of the instrument, however, that no other construction can be placed on it. Thus, to create an easement by express grant, there must be a writing containing plain and direct language evincing the grantor's intent to create a right in the nature of an easement rather than a license.

25 Am. Jur. 2d Easements and Licenses § 15 (footnotes omitted). "To determine whether an easement is the intention of the parties, courts will examine the language of the grant, the circumstances surrounding its creation and the property involved, with construction in favor of the grantee." AOAO of Wailea Elua, 100 Hawai'i at 123, 58 P.3d at 634 (Ramil, J., concurring) (quoting Thompson on Real Property § 60.03(a)(7) at 415).

A condominium declaration can establish an easement. See Garfink v. Cloisters at Charles, Inc., 897 A.2d 206, 213-18 (Md. 2006) (holding that traditional easement law applies to condominiums, the establishment of an easement in a condominium declaration is analogous to the establishment of an easement by deed, and the condominium declaration therein created an express easement). Similarly, a map or plat setting forth an easement and incorporated as part of a conveyance, including a condominium declaration, can create an express easement, so long as that was the intent of the grantor. See Application of Kelley, 50 Haw. 567, 577, 445 P.2d 538, 545 (1968) ("[I]f it clearly appears from the language of the conveyance or from any map or plat made a part thereof or, perhaps from other circumstances, that it was the intent of the grantor to convey only as far as and not including the bed of the stream . . . the deed will be so construed to carry out that intent.") (citation omitted); Conway v. Miller, 232 P.3d 390, 395-96 (Mont. 2010); Bache v. Owens, 883 P.2d 817, 820-21 (Mont. 1994); Jon W. Bruce & James W. Ely, Jr., The Law of Easements and Licenses in Land § 3:5 (2011) ("a

condominium declaration, or a plat map may create an express easement.") (footnotes omitted).

In this case, it appears clear from the 26A/26E Map (recorded as part of Condominium Map No. 3902 and the CPR Declaration) that it contains easements AU-26A and AU-26E over Remnant 3 in favor of the Grinpases' Lot 77J.  The notes on the 26A/26E Map state, in relevant part:

> 3. Easement AU-26A affecting Unit 26A, in favor of TMK: (4) 4-6-007: 087, Lot 77-J, for access and utility purposes. (0.090 Acre)
> 4. Easement AU-26E affecting Unit 26E, in favor of TMK: (4) 4-6-007: 087, Lot 77-J, for access and utility purposes. (0.209 Acre)

The point of contention in this case is whether by executing the Consent and Joinder, KPL *intended* to create the easements reflected in the 26A/26E Map.  The undisputed state of the evidence in the record is that: the CPR Declaration executed by Kapaa 382 and the 26A/26E Map were recorded on December 14, 2004; and the Consent and Joinder by KPL was recorded thereafter on December 21, 2004 (although it had been signed previously on either November 30, 2004 or December 1, 2004).

In its opposition to the Grinpases' motion for partial summary judgment, KPL submitted the declaration of C. Dustin Crane dated May 6, 2009, which stated in part:

> 3.    In 2004, Kapaa 382, LLC ("Kapaa 382") provided a copy of the *Consent and Joinder* to KPL for KPL's execution. However, at no time did Kapaa 382, William R. Hancock ("Hancock") or anyone else: (a) notify KPL that Condominium Map No. 3902 depicts Easement "AU-26A" and Easement "AU-26E" on Remnant 3; (b) discuss Easement "AU-26A", Easement "AU-26E" or any other easement with KPL; or (c) discuss Plaintiffs' alleged interest in Easement "AU-26A" and Easement "AU-26E".
>
> 4.    KPL would not have executed the *Consent and Joinder* had it known that Kapaa 382, Hancock, Plaintiffs Robert Grinpas and Esther Grinpas and/or anyone else would use it to establish Easement "AU-26A" and Easement "AU-26E" over Remnant 3.

16

Moreover, in answers to the Grinpases' interrogatories, KPL explained its claim that the Grinpases' conduct was wrongful regarding the CPR Declaration, stating in relevant part:

> In or around 2004, Plaintiffs, Kapaa 382, Mr. Hancock, Mr. Hancock, Trustee . . . attempted to replace and or expand the License Agreement with an access and utilities easement over Remnant 3 in favor of [the Grinpases], Unit 3 and/or Unit 2x without KPL's knowledge, authority or consent, by, among other things, misrepresenting to KPL that KPL would be able to subdivide and develop Remnant 3 if Remnant 3 was included as part of the Project, and then improperly coerced and/or induced KPL to include Remnant 3 in the Project by the Declaration, Amended Declaration, the Project's Condominium Map and/or Condominium File Plan No. 3902.

Given the evidence at this point, it is unclear if KPL was somehow misled by others as to the effect of the Consent and Joinder.

KPL argues, moreover, that the Consent and Joinder is a nullity because it fails to properly describe its subject property. That is, the TMK number on the Consent and Joinder -- TMK (4)4-3-3:022 -- does not match the TMK number that the CPR Declaration indicates is Remnant 3 -- TMK 4-4-3-3-021. The Grinpases respond that the TMK on the Consent and Joinder was the correct one for Remnant 3,[10] that the CPR Declaration contained a scrivener's error in how it described Remnant 3, and that in any event, the Consent and Joinder references the document numbers for the CPR Declaration as well as the Trustee's Deed that transferred Remnant 3 to KPL.[11] These arguments serve to further underscore the factual disputes that exist and that the record is not sufficiently developed to warrant summary judgment relative to the condominium documents.

---

[10] Both parties, it appears, fail to adduce admissible evidence as to the correct TMK number for Remnant 3. The correct TMK number remains unclear.

[11] We again note, however, that the document number for the Trustee's Deed affecting Remnant 3 is Document No. 2002-152285, whereas the Consent and Joinder references a document number that is one digit different, Document No. 2004-152285.

17

Additionally, the declaration recorded on December 14, 2004 and the Consent and Joinder do not contain express language that would, in and of itself, clarify the intent of KPL related to easements 26A and 26E.

Ultimately, looking at the language of the relevant CPR documents (the CPR Declaration, including the 26A/26E Map, and the Consent and Joinder), the circumstances surrounding their creation, and the property involved, there remain genuine issues of material fact as to whether KPL intended to create easements AU-26A and AU-26E by executing the Consent and Joinder. With respect to each party's motion for partial summary judgment, they have each failed to carry their respective burden of proof, and viewing the evidence in the light most favorable to the respective non-moving party, summary judgment was not proper for either party relative to the condominium documents.

### 2. Second Amended Declaration – withdrawal of Remnant 3 from the Kulana CPR

It is KPL's position that, even if the condominium documents created easements AU-26A and AU-26E, Remnant 3 was withdrawn from the Kulana CPR by way of the Second Amended Declaration and thus the easements no longer exist.

KPL contends that they withdrew Remnant 3 from the Kulana CPR in compliance with HRS § 514A-21(b) (2006 Repl.), the CPR Declaration and the First Amended Declaration. Even if we assume *arguendo* that there was compliance with HRS § 514A-21(b),[12] it is unclear if, by way of the Second Amended Declaration, KPL intended to extinguish easements AU-26A and AU-26E. The language

---

[12] HRS § 514A-21(b) requires, in pertinent part, that "[a]ll of the apartment owners may remove a property, or a part of a property, from this chapter by an instrument to that effect, duly recorded, provided that the holders of all liens affecting any of the apartments consent thereto, by instruments duly recorded." KPL's answering brief contends Remnant 3 was not subject to any lien when it was removed from the Kulana CPR, however the record citation is to a non-existent volume in the record.

in the Second Amended Declaration is less than clear on this point and there is no specific reference to the easements in question. The Second Amended Declaration states "<u>except as hereinafter set forth</u>, neither Remnant 3 nor such condominium units shall be burdened by nor receive the benefits of the Declaration, Bylaws, or the Condominium Map[.]" (Emphasis added). The quitclaim deed by Kapaa 382, which is part of the same document, thereafter states that Kapaa 382 deeds its interests and rights in Remnant 3 to KPL, "subject, however, to the encumbrances, exceptions, reservations and other matters, if any, <u>set forth therein</u> or herein." (Emphasis added). The meaning of this language is simply unclear.

Adding further to the confusion, KPL's interrogatory responses do not suggest that removing the easements was part of the intent behind the Second Amended Declaration. KPL's answer to an interrogatory regarding the Second Amended Declaration states, in part:

> in and around 2005, Plaintiffs, Mr. Hancock, Mr. Hancock, Trustee and/or Kapaa 382 represented to KPL that it would be easier to finalize the Project's application for and/or registration as a Condominium Property Regime pursuant to Haw. Rev. Stat. Ch. 514A if Remnant 3 was removed from the Project. Thus, Plaintiffs, Mr. Hancock, Mr. Hancock, Trustee, Kapaa 382 induced and/or coerced KPL into executing the July '05 Amendment and/or Quitclaim Deeds without: (1) explaining to KPL why removal of Remnant 3 from the Project would make it easier to finalize the Project's application for and/or registration as a Condominium Property Regime; (2) explaining that Remnant 3 could not lawfully be included in the Project because KPL owned Remnant 3, not the Project's developer -- Kapaa 382; or (2) [sic] disclosing any information to KPL regarding the purported easements "AU-26A" and "AU-26E" in favor of Plaintiffs, Unit 3 and/or Unit 2x, allegedly encumbering Remnant 3 pursuant to, among other things, the Declaration, Amended Declaration, the Project's Condominium Map and/or Condominium File Plan No. 3902.

In addition to the above, if the easements were created by the earlier CPR documents, KPL adduces no evidence that the Grinpases agreed or consented to the termination of the easements.

> An easement cannot be terminated or abridged at will by the owner of the servient estate or his successors, or without the consent of the owner of, or those persons entitled to, the easement, unless the instrument by which the easement was created clearly manifests an intention that the easement shall be terminable at the will of the owner of the servient estate, or at the option of either or both parties. . . . An easement created by reference to a filed map can be extinguished only by the united action of all lot owners for whose benefit the easement is created. . .

28A C.J.S. Easements § 140 (2008).

KPL has not carried its burden to show that it is entitled to summary judgment on the alleged basis that it withdrew Remnant 3 from the Kulana CPR.

## C.  Intended Beneficiary

We do not find merit in the Grinpases' argument that they are intended third party beneficiaries of DROA provision C-67(A)(2) and the recorded Kulana CPR documents. The authorities cited by the Grinpases do not support their contention that they are third party beneficiaries entitled to an easement, where it is unclear if an easement was created. Rather, their entitlement to the easements rests on the question of whether such easements were intended and granted. As set forth above, the DROA provision did not create an easement. With regard to the Kulana CPR documents, genuine issues of material fact remain.

## D.  Notice and the License Agreement

Likewise, we find no merit in the Grinpases' assertion that they are entitled to the easements because KPL took title to Remnant 3 with notice of the easements. Similarly, the Grinpases' argument that KPL understood that DROA provision C-67(A)(2) referred to an easement rather than the License Agreement is not determinative. Rather, the question in both respects is whether an easement actually existed. Based on the evidence in the record, the DROA provision did not create an easement and there was no easement when title to Remnant 3 passed to KPL.

E.  **Equity**

The Grinpases argue, without reference to any legal authority, that the circuit court erred because it reached an inequitable result.  We reject this argument.

F.  **The Grinpases' Motion to Alter or Amend**

We also do not agree with the Grinpases' contention that the circuit court erroneously denied their motion to alter or amend the partial summary judgment order and judgment, which was in essence a motion for reconsideration.  "The trial court's ruling on a motion for reconsideration is reviewed under the abuse of discretion standard."  Cho v. State, 115 Hawai'i 373, 381, 168 P.3d 17, 25 (2007) (citation omitted).

The Grinpases' motion asserted that the circuit court should reconsider its summary judgment rulings in light of the testimony by Hancock at trial.  The Grinpases' motion did not submit actual evidence of Hancock's testimony, but simply asserted in its memoranda his purported testimony.

Moreover, a motion for reconsideration is meant to allow the movant to present new evidence or new arguments that could not have been presented in the earlier proceeding.  See AOAO of Wailea Elua, 100 Hawai'i at 110, 58 P.3d at 621 (citation omitted); Pancakes of Hawaii, Inc. v. Pomare Props. Corp., 85 Hawai'i 286, 296-97, 944 P.2d 83, 93-94 (App. 1997) (citation omitted).  The Grinpases made no showing why they could not have secured Hancock's testimony and presented it earlier in the summary judgment proceedings.

G.  **The Grinpases' Motion for Partial Summary Judgment**

As discussed above, the Grinpases did not carry their burden to show that they were entitled to partial summary judgment.  DROA provision C-67(A)(2) did not create an easement, and thus summary judgment was proper in favor of KPL on this point.

21

As to the Kulana CPR documents, there are genuine issues of material fact concerning whether those documents created easements AU-26A and AU-26E, as discussed above. Therefore, the circuit court did not err in denying the Grinpases' motion for partial summary judgment on this point.

IV.  **Conclusion**

For the reasons set forth above, we vacate the judgment entered by the circuit court on August 3, 2009, and we remand this case for further proceedings consistent with this opinion.

DATED:  Honolulu, Hawai'i, February 15, 2012.

Robert Grinpas
for Plaintiffs-Appellants

Jade Ching
Shellie Park-Hoapili
(Jade Ching
Laura P. Moritz with her on the brief)
(Alston Hunt Floyd & Ing)
for Defendant/Third-Party
Plaintiff-Appellee

Presiding Judge

Associate Judge

Associate Judge

22